**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-1761-WJM-KLM

GREG A. RACE,
LEIF P. TREINEN,

    Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LAKE, COLORADO,
BRUCE HIX, in his individual capacity,
DOLORES SEMSACK, in her individual capacity,
JAMES MOYER,
ALL UNKNOWN PERSONS WHO CLAIM ANY INTEREST IN THE SUBJECT PROPERTY,

    Defendants.

---

## ORDER ON PENDING MOTIONS

---

    Plaintiffs Greg A. Race and Leif P. Treinen ("Plaintiffs") bring this action against the Lake County Board of Commissioners and certain individuals associated with the Board (collectively, "Defendants"), as well as against "all unknown persons who claim any interest" in certain real property in Lake County. (ECF No. 4.) Plaintiffs argue that Defendants have deprived them of property without due process or just compensation by declaring public a certain primitive road that crosses over Plaintiffs' property. (*See generally id.*)

    Currently before the Court are two motions:

    1.    Plaintiffs' Motion to Compel Joinder of Necessary Parties Pursuant to Rule 19, Fed. R. Civ. P. (ECF No. 25); and

    2.    Defendants' Motion for Judgment on the Pleadings Regarding Federal Claim and Failure to Join Parties (ECF No. 26).

For the reasons explained below, Plaintiffs' Motion to Compel Joinder is denied, and Defendants' Motion for Judgment on the Pleadings is granted in part as to Plaintiffs' obligation to join certain necessary parties, but otherwise denied.

## I. FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs claim total or partial ownership of twelve mining claims in Lake County, all of which are crossed in various places by several primitive dirt roads. (ECF No. 4 ¶¶ 7, 11.) On November 1, 2013, Defendant Board of Commissioners held a special meeting to discuss at least one of those roads. (*Id.* ¶ 14.) According to the minutes of that meeting, which Plaintiffs attached to their Complaint, "[t]he purpose of this meeting was to discuss and make a decision regarding [C]ounty Road 6B. * * * The questions asked [were], [I]s there public access? How can it be protected? Where is public access? What is the destination of 6B as there are 4 to 5 spurs?" (ECF No. 4 at 11.)

This meeting was "a follow-up [to] a field visit," more specifically, a "tour[]" of County Road 6B attended by the County Commissioners, Plaintiffs, and various others. (*Id.*) This party specifically "walked to the route thru [*sic*] [Plaintiffs'] property." (*Id.*) At the ensuing Board meeting, after lengthy discussion and public input, the Board voted (2-1) to declare County Road 6B public. (*Id.* at 13–14.)

Plaintiffs claim that, about a week later, "employees of the [Board] entered upon [Plaintiffs'] Property without permission and removed Plaintiffs' gates, cables, signs and other improvements installed to obstruct that . . . portion the Road(s) crossing

[Plaintiffs'] Property." (ECF No. 4 ¶ 17.)[1] Plaintiffs soon "replaced and reinstalled those obstructions." (*Id.* ¶ 19.) In October 2014, Board employees again tore down Plaintiffs' obstructions. (*Id.* ¶ 23.)

Plaintiffs then filed this lawsuit in Lake County District Court, alleging inverse condemnation, violation of their federal constitutional rights (as made actionable under 42 U.S.C. § 1983), violation of the Colorado Open Meetings Law, trespass, and quiet title, along with related injunctive and declaratory relief. (*See id.* at 4–7.) Defendants timely removed to this Court based on the federal question jurisdiction created by Plaintiffs' § 1983 claim. (ECF No. 1 ¶¶ 2–3.)

## II. ANALYSIS

**A.    Ripeness**

The Fifth Amendment to the United States Constitution forbids the federal government from taking private property "without just compensation." In 1897, the Supreme Court ruled that the Fourteenth Amendment's due process clause imposes the same restriction on state and local governments. *See Chicago, Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226, 241 (1897). Thus, a taking of property without just compensation by a state or local government is a Fifth and Fourteenth Amendment violation, and therefore actionable under 42 U.S.C. § 1983. Such a claim, however, "is premature until it is clear that the Government has both taken property *and* denied just compensation." *Horne v. Dep't of Agric.*, 133 S. Ct.

---

[1] Plaintiffs refer to "Road(s)" rather than County Road 6B because they claim that numerous primitive roads cross their property and the actual route of County Road 6B is undetermined. (*See, e.g.*, ECF No. 4 ¶¶ 11, 16.) Below at Part II.B, the Court explains why this alleged indeterminacy appears to be a pleading tactic rather than a real concern.

2053, 2062 (2013) (emphasis in original). This is sometimes known as the "*Williamson* requirement" because it originated with *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186–87 (1985).

Plaintiffs' second claim for relief is a § 1983 claim alleging that Defendants' actions deprived them of real property (the roadway) and personal property (the signs, chains, padlocks, etc., that Plaintiffs used to obstruct the roadway) without due process or just compensation. Given that there has been no hearing on the propriety of the alleged taking, or on just compensation, Defendants contend that the *Williamson* requirement dictates dismissal of Plaintiffs' § 1983 claim as unripe. (ECF No. 27 at 8–11.) Furthermore, because the § 1983 claim is the only federal claim in this case, Defendants request that the Court, upon dismissing that claim, also remand this action to state court. (*Id.* at 13–14; *see also* ECF No. 26 at 4.)

This is a truly curious claim. *Defendants removed this action to this Court*. Indeed, Defendants justified removal specifically on the basis of the federal question jurisdiction created by Plaintiffs' § 1983 claim. (*See* ECF No. 1 ¶¶ 2–3.) Now Defendants want the Court to shear off that single claim—on procedural rather than substantive grounds—and send everything else back to state court.

Defendants are not the first to try this unusual maneuver, but it has rarely succeeded due to three propositions:

1.  the *Williamson* requirement is grounded in part in the belief that state courts have more facility with "the complex factual, technical, and legal questions related to zoning and land-use regulations," *San Remo Hotel,*

        *L.P. v. City & Cty. of San Francisco*, 545 U.S. 323, 347 (2005);

2.    nonetheless, *Williamson* "does not preclude state courts from hearing simultaneously a plaintiff's request for compensation under state law and the claim that, in the alternative, the denial of compensation would violate the Fifth Amendment of the Federal Constitution," *id.* at 346; and

3.    the *Williamson* requirement is not jurisdictional, *see Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 729 (2010), but is a matter of prudential ripeness only, *see Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 733–34 & n.7 (1997).

Thus, various courts have reasoned that state and local entities waive the *Williamson* requirement when they remove to federal court based on the federal question jurisdiction created by a § 1983 claim.  *See, e.g.*, *Sansotta v. Town of Nags Head*, 724 F.3d 533, 544–47 (4th Cir. 2013); *Athanasiou v. Town of Westhampton*, 30 F. Supp. 3d 84, 87–89 (D. Mass. 2014); *River N. Props., LLC v. City & Cnty. of Denver*, 2014 WL 1247813, at *2–9 (D. Colo. Mar. 26, 2014) (Arguello, J.); *Merrill v. Summit Cnty.*, 2009 WL 530569, at *2–3 (D. Utah Mar. 2, 2009).

      The Court generally agrees that waiver is the appropriate outcome, although for somewhat narrower reasons than those expressed in the foregoing decisions.  For example, some of these decisions display a worry that any other outcome would endorse what they see as a tactic to "manipulat[e] litigation by removing to federal court claims properly filed in state court . . . and then claiming that the plaintiff cannot proceed on those claims, thereby denying a plaintiff *any* forum for having his claim

heard." *Sansotta*, 724 F.3d at 547 (emphasis in original); *accord River N. Props.*, 2014 WL 1247813, at *8. This seems to imply that dismissing the § 1983 claim as unripe would be some sort of adjudication on the merits. Clearly the case is otherwise. *See, e.g.*, *Stewart v. Martinez-Villareal*, 523 U.S. 637, 644–45 (1998) (distinguishing between dismissal for failure to exhaust state remedies and adjudication on the merits); *Rocky Mountain Materials & Asphalt, Inc. v. Bd. of Cnty. Comm'rs of El Paso Cnty.*, 972 F.2d 309, 311 (10th Cir. 1992) (same). Indeed, the statute of limitations does not begin to run on a § 1983 takings claim until state procedures have concluded. *See, e.g.*, *Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 587–88 (11th Cir. 1990); *cf. Mejia v. Harrington*, 541 F. App'x 709, 710 (7th Cir. 2013) (holding, in the habeas context, that "the claim is unripe, and the statute of limitations has not begun to run").

The Court also does not believe that worry about forcing the plaintiff "to submit to another round of filing fees, conform again to a different set of procedural rules, and experience further delay and resolution of its case" is particularly salient. *River N. Props.*, 2014 WL 1247813, at *9; *accord Athanasiou*, 30 F. Supp. 3d at 89. These concerns are precisely what a takings plaintiff faces if he or she takes the traditional *Williamson* route, *i.e.*, seeking just compensation in state court and, if unsuccessful, then filing a § 1983 claim in federal court.

In the Court's view, the soundest reason for deeming state and local entities to have waived the *Williamson* requirement upon removal is to discourage a procedural maneuver that adds nothing to the dispute but delay. Coming to federal court simply to have it declare the federal claim unripe is essentially pointless because the federal

claim is *also* unripe in state court.  Both venues must first determine whether the plaintiff is entitled to just compensation (and if so, the amount of such compensation) before reaching a § 1983 takings claim.  Thus, a defendant who succeeds in having a federal court dismiss the federal claim as unripe puts the case in effectively the same position it stood before removal.  Nothing has been gained except delay, and delay for its own sake is not an appropriate use of the court system.

Defendants protest that they have legitimate reasons for removing based on their supposed right to have federal claims heard in a federal forum:

> In this action, Plaintiffs put the County Defendants in the untenable position of having to litigate complex federal issues in state court and forfeit their right to have a federal court address federal issues, or remove the case.  The complexity of federal law, exemplified by the very issue presented, led to the decision to remove this case.  The fact that Colorado state courts are not bound by Tenth Circuit opinions, magnifies the complexity of litigating federal issues in state court.
>
> . . . In addition to asserting the federal claim against the Board, Plaintiffs also asserted the federal claim against the two county commissioners . . . in their individual capacity . . .
>
> . . . If [Defendants] had chosen to remain in state court, [they] were faced with defending federal issues, including issues of qualified immunity, subject to a myriad of opinions from across the nation without deference to the opinions in this Circuit.

(ECF No. 30 at 5–7 (citations omitted).)  The Court finds this argument unpersuasive for several reasons.

First, it is incoherent.  Defendants are *not* asking this Court to "address federal issues" such as qualified immunity, but to dismiss the § 1983 claim as unripe and remand the rest of the case to state court.

7

Second, to the extent Defendants mean to force Plaintiffs to assert their § 1983 claim at a later time (presumably as a second lawsuit that could be removed to federal court, if not filed here), Plaintiffs could potentially defeat this tactic by re-urging their § 1983 by way of amendment in the original state court case.  That is because the relevant removal statute only tolls the 30-day removal window when "the *initial pleading* is not removable." 28 U.S.C. § 1446(b)(3) (emphasis added).  Thus, assuming (a) this Court dismisses the § 1983 claim as unripe and remands the rest of the case state court, (b) the state court denies compensation, thus making the § 1983 claim ripe, and (c) Plaintiffs successfully seek to amend their state court complaint to re-assert a § 1983 claim (rather than filing a new action), there is a fair argument that Defendants could not invoke § 1446(b)(3), and would be stuck in state court regardless.

Third, Defendants overstate their entitlement when they say that they have a "right to have a federal court address federal issues."  In *San Remo*, the Supreme Court repudiated the plaintiffs' argument that they had "a right to vindicate their federal [takings] claims in a federal forum." 545 U.S. at 342–43.  This Court cannot see how a defendant could have a greater right to have federal takings defenses heard in a federal forum.

Fourth, the Court is unconvinced that the Colorado court system is ill-equipped to adjudicate federal takings claims.

> It is hardly a radical notion to recognize that, as a practical matter, a significant number of plaintiffs will necessarily litigate their federal takings claims in state courts. . . . [M]ost of the cases in [the Supreme Court's] takings jurisprudence . . . came to [the Court] on writs of certiorari from state courts of last resort.

*San Remo*, 545 U.S. at 346–47. In short, state courts have ample experience with this sort of claim.

Finally, as to qualified immunity in particular, litigating in state court is often *more* favorable to defendants. In the Tenth Circuit, qualified immunity's "clearly established" prong is evaluated with reference to Supreme Court and Tenth Circuit decisions. *See McFall v. Bednar*, 407 F.3d 1081, 1087 (10th Cir. 2005). In state court, by contrast, the "myriad of opinions from across the nation" to which Colorado courts look "without deference to the opinions in [the Tenth] Circuit" (ECF No. 30 at 7) tends to show more disagreement about the relevant constitutional right than would be present when only Supreme Court and Tenth Circuit law are relevant. Thus, it is generally easier for a defendant to show that the right at issue is not clearly established. *See, e.g.*, *Churchill v. Univ. of Colo. at Boulder*, 285 P.3d 986, 1010–11 (Colo. 2012) (holding that the tension between a Seventh Circuit case and a Tenth Circuit case showed that "the federal case law in [the relevant] area is too unsettled to defeat the [defendants'] claim of qualified immunity").

For all these reasons, the Court holds that Defendants waived their *Williamson* challenge when they removed to federal court. Defendants' Motion for Judgment on the Pleadings is denied in that respect.

**B.    Joinder**

The remainder of Defendants' Motion for Judgment on the Pleadings argues that this lawsuit should not go forward without Plaintiffs joining all potentially affected landowners. (ECF No. 27 at 11–13.) Plaintiffs' Motion to Compel Joinder argues that

this lawsuit should not go forward without Defendants joining all potentially affected landowners. (*See generally* ECF No. 25.) In other words, both sides claim that additional landowners should be made parties to this lawsuit, but they disagree over who has the duty to make that happen. At bottom, this disagreement seems motivated by money—the cost of serving process on numerous individuals—rather than any genuine concern over the proper procedure for joining parties. "Plaintiffs estimate as many as fifty or more Additional Landowners own property" that could be affected by a ruling regarding public access. (*Id.* at 6.)

Both Plaintiffs and Defendants rely on Federal Rule of Civil Procedure 19, which reads in relevant part:

> **(a) Persons Required to Be Joined if Feasible.**
>
> **(1) *Required Party*.** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
>
> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
>
> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
>
> **(2) *Joinder by Court Order*.** If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an

involuntary plaintiff.

Interestingly, this Rule does not specify which party has the burden of serving process. Rather, it speaks entirely in passive voice on this matter, describing persons who "must be joined" and directing courts to "order that [a] person be made a party." But Rule 19 contains at least one hint that the plaintiff, or whomever asserts an affirmative claim for relief, bears the burden to accomplish joinder. Specifically, Rule 19(c) provides: "When asserting a claim for relief, a party must state: (1) the name, if known, of any person who is required to be joined if feasible but is not joined; and (2) the reasons for not joining that person." By requiring such a party to explain the reasons for not joining another person, the Rule implies that the burden would indeed be on that party to ensure joinder of necessary parties.

In addition, treatises on the subject generally frame the obligation as one falling on the plaintiff. *See, e.g.*, 4 James Wm. Moore *et al.*, *Moore's Federal Practice* § 19.04[4][a] ("If the court finds an absentee is needed for a just adjudication (that is, a necessary or 'required' party), and if the court also finds that joinder of the absentee is feasible, it will usually give the plaintiff an opportunity to add the absentee. If the plaintiff fails to do so, the court may dismiss the action because of plaintiff's noncompliance." (footnotes omitted)); 7 Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 1611 (3d ed., Apr. 2015 update) ("We know of no basis for permitting a defendant in any case to use Rule 19 to compel joinder of other defendants. The most that a defendant can accomplish by invoking Rule 19 is to obtain an order dismissing the complaint if plaintiff fails to join additional parties." (internal quotation marks omitted)).

No party appears to dispute this. Indeed, Plaintiffs seemingly concede it through a preliminary argument that Defendants should, to some extent, be considered counterclaim plaintiffs in this action. (ECF No. 25 at 4–5.) Defendants do not assert any counterclaims, but Plaintiffs point to two of Defendants' affirmative defenses:

> 6. Any portion of the road at issue in this action that runs over Plaintiffs' property is a public road pursuant to Colo.Rev.Stat. §§ 43-1-202 and 43-2-201(1)(c).
>
> 7. Any portion of the road at issue in this action that runs over Plaintiffs' property is a public road pursuant to 43 U.S.C. § 932 (repealed in 1976).

(ECF No. 11 at 4.) According to Plaintiffs, Defendants would be obtaining affirmative relief if they succeed on this argument (*i.e.*, a decree establishing the road's public status), and therefore these defenses should be redesignated as counterclaims. (ECF No. 25 at 5.) *See also* Fed. R. Civ. P. 8(c)(2) ("If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so."). Although Plaintiffs never say so explicitly, the obvious implication is that such redesignation opens up their argument that Defendants must join any additional necessary parties. *Cf.* Fed. R. Civ. P. 13(h) ("Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim."). Thus, all parties appear to agree that the joinder burden should fall on whichever party is seeking affirmative relief.

To the extent Defendants seek affirmative relief, as Plaintiffs contend, such relief is essentially the mirror image of the affirmative relief Plaintiffs already seek. Plaintiffs currently argue that "[t]his Court's judgment [on the affirmative defenses described

12

above] will effectively decide whether the entire length of the Road(s) are open to the public." (ECF No. 25 at 6.) But Plaintiffs' Complaint already requests, among other things, a decree under Colorado Rule of Civil Procedure 105

> quieting title and completely adjudicating the rights of the parties hereto and with respect to the Property, including a determination that the Plaintiffs are the fee simple owners of the Property, free and clear of any interest claimed or asserted by the Defendants, and that the portion of the Road(s) crossing the Property is not a public road and does not provide any form of public access across the Property.

(ECF No. 4 ¶ 48.) Rule 105's intent is to reach "a complete adjudication of the rights of all parties . . . to any real property." Colo. R. Civ. P. 105(a).[2] Similarly, Plaintiffs' inverse condemnation claim requires Plaintiffs to identify "the names of all persons interested as owners or otherwise." Colo. Rev. Stat. § 38-1-102(1). Thus, through their inverse condemnation and quiet title causes of action, Plaintiffs effectively concede that, to the extent other landowners may be affected, those landowners are necessary parties *because of* the affirmative relief Plaintiffs seek. Thus, if any such landowners exist, Plaintiff has the burden of joining them.

Surprisingly, Plaintiffs' filings seem to say both that such landowners exist and that they do not exist. In Plaintiffs' Motion to Compel Joinder, they assert that "as many as fifty or more Additional Landowners . . . [are] necessary part[ies] to this action." (ECF No. 25 at 6.) However, in response to Defendants' Motion for Judgment on the Pleadings, Plaintiffs say that "complete relief can be accorded between the existing

---

[2] Although Rule 105 is a state rule of civil procedure, this Court applies it when a quiet title action otherwise comes within the Court's jurisdiction. *See, e.g.*, *Armstrong v. JPMorgan Chase Bank Nat'l Ass'n*, 2014 WL 1363934, at *4 (D. Colo. Apr. 7, 2014), *aff'd*, 2015 WL 8593408 (10th Cir. Dec. 14, 2015).

13

parties." (ECF No. 29 at 7.) Although these statements seem flatly contradictory, it appears Plaintiffs are trying to make a subtle distinction between, on the one hand, all landowners over whose property the network of primitive roads runs ("Additional Landowners"), and, on the other hand, those individuals who co-own with Plaintiffs certain affected properties ("Co-Owners"). Plaintiffs believe that Defendants must join the Additional Landowners, but Plaintiffs also believe that they (Plaintiffs) have no obligation to join their Co-Owners.

In support of the latter position, Plaintiffs claim that they "seek, primarily, an award of damages for the Defendant County's inverse condemnation of Plaintiffs' property. Those damages can be awarded without consideration of [the Co-Owners'] damages." (ECF No. 29 at 7.) The Court disagrees. Plaintiffs admit that they own only a fractional interest in most of the potentially affected properties. (ECF No. 4 ¶ 7.) Thus, damages for inverse condemnation would need to be apportioned among Plaintiffs and the Co-Owners. The Co-Owners certainly have an interest in that.

Moreover, Plaintiffs specifically created a placeholder category of defendants described as "all unknown persons who claim any interest in the subject property." (ECF No. 4 at 1.) It defies reason to suggest that all *unknown* persons with an interest in the property should be joined, but *known* persons (such as the Co-Owners) should not.

Plaintiffs nonetheless claim that "Defendant County has never delineated the exact route it claims to be public," and therefore

> Plaintiffs cannot be expected to join Co-Owners to this
> action that may, or may not, be crossed by the road claimed
> to be public by the County. No single road in the area

> crosses all of the Plaintiffs' mining claims. Rather[,] certain possible routes cross certain of Plaintiffs' mining claims, and other routes cross other of Plaintiffs' mining claims.

(ECF No. 29 at 6.) This argument borders on bad faith. Plaintiffs attached to their Complaint the minutes of the November 2013 Board meeting, and those minutes state that the Commissioners, various other officials, and both Plaintiffs had recently "toured" the road and "walked the route thru [*sic*] [Plaintiffs'] property." (ECF No. 4 at 11.) Moreover, Plaintiffs know exactly where their gates, chains, signs, and so forth, have been torn down and confiscated. (*Id.* ¶¶ 13, 17, 19, 23.) Plaintiffs cannot plausibly claim that they do not know the intended route of the road.

Consequently, Plaintiffs must join at least some parties to this lawsuit. The question is, "Which ones?" Plaintiffs must at least join their Co-Owners on the properties over which the road runs.[3] Absent those parties, Defendants would be "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations," Fed. R. Civ. P. 19(a)(1)(B)(ii), particularly on the question of just compensation for the taking. Thus, the Court "must order" that the affected Co-Owners "be made a party." *Id.* 19(a)(2).[4]

Defendants seek an order going even further. Defendants point to Plaintiffs' position in the Scheduling Order that the Additional Landowners are necessary parties.

---

[3] Although the number of Co-Owners may be numerous, no party has argued that joining the Co-Owners is not "feasible." *See* Fed. R. Civ. P. 19(b). Accordingly, the Court does not address the feasibility question.

[4] Defendants posit that Colorado itself might be a Co-Owner, and if so, joining it may create "issues under the Eleventh Amendment." (ECF No. 28 at 11–12.) At this point, this concern is entirely speculative.

(*See* ECF No. 27 at 5, 12–13.) Defendants therefore argue that Plaintiffs have judicially admitted the need to join the Additional Landowners. (*Id.*) The Court disagrees. Plaintiffs' position in the Scheduling Order was only a summary of the Motion to Compel Joinder that they eventually brought, and which is now before the Court. As for the Motion to Compel Joinder itself, the Court views its insistence on requiring joinder of the Additional Parties as a legal proposition, not a factual matter subject to judicial admission. *See Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9*, 10 F.3d 700, 716 (10th Cir.1993) (holding that judicial admissions go to questions of fact, not legal propositions), *abrogated in part on other grounds on reh'g*, 39 F.3d 1078 (10th Cir. 1994) (en banc). In addition, whether to treat statements in briefs as admissions is within the Court's discretion. *Guidry*, 10 F.3d at 716. The Court exercises its discretion not to treat the Motion to Compel Joinder as an admission regarding the Additional Parties.

Furthermore, Defendants frame their affirmative defenses in terms of whatever portions "of the road at issue in this action that run[] over Plaintiffs' property." (ECF No. 11 at 4.) Thus, as the issues are currently framed, it appears that the relevant question is not whether the entire course of any road qualifies as public, but whether the portions that cross Plaintiffs' property are public. Given that, joinder of Additional Landowners is unnecessary at this time. Thus, Plaintiff's Motion to Compel Joinder is denied, and Defendants' Motion for Judgment on the Pleadings is denied to the extent Defendants argue that Plaintiffs must join the Additional Landowners, but granted to the extent Defendants argue that Plaintiffs must join the Co-Owners.

Importantly, however, Plaintiffs may not need to resort to service of process to accomplish the needed joinder. Plaintiffs could instead approach the relevant Co-Owners informally and invite them move to intervene under Federal Rule of Civil Procedure 24(a)(2). Given that Defendants themselves believe the Co-Owners should be joined, the Court presumes such a motion would be unopposed.[5] In addition, although the federal courts are split on the issue, courts in the Tenth Circuit generally permit a process server's fee to be recovered by the prevailing party as a taxable cost under 28 U.S.C. § 1920, to the extent the fee does not exceed the statutorily authorized fee charged by the U.S. Marshals. *See Griffith v. Mt. Carmel Med. Ctr.*, 157 F.R.D. 499, 507–08 (D. Kan. 1994).

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiffs' Motion to Compel Joinder of Necessary Parties Pursuant to Rule 19, Fed. R. Civ. P. (ECF No. 25) is DENIED;

2. Defendants' Motion for Judgment on the Pleadings Regarding Federal Claim and Failure to Join Parties (ECF No. 26) is GRANTED IN PART and DENIED IN PART as follows:

    a. The Motion is granted as to the proposition that Plaintiffs' Co-Owners are necessary parties, and that, as between Plaintiffs and Defendants, the burden of serving process on the Co-Owners falls on Plaintiffs; and

    b. The Motion is otherwise denied; and

---

[5] If Defendants *do* oppose, the Court expects to hear an extremely persuasive reason.

3.      To avoid dismissal for failure to join necessary parties, Plaintiffs must accomplish joinder of the Co-Owners no later than <u>May 31, 2016</u>.

Dated this 28th day of March, 2016.

BY THE COURT:

_____
William J. Martinez
United States District Judge